UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| JULIETA ALVAREZ, | ) No. CV 09-05768-VBK |
| | ) |
| Plaintiff, | ) MEMORANDUM OPINION |
| | ) AND ORDER |
| v. | ) |
| | ) (Social Security Case) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1.   Whether the Administrative Law Judge ("ALJ") erred in

```
            finding that Plaintiff could perform her past relevant work;
            and
    2.  Is reversal the appropriate remedy in this case?
(JS at 3.)
```

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed.

Plaintiff's first issue, which questions whether the ALJ erred in finding that she could perform her past relevant work ("PRW"), breaks down into three discrete sub-issues. First, with regard to the assessment of Plaintiff's mental residual functional capacity ("MRFC"), Plaintiff argues error. Second, concerning Plaintiff's exertional limitations as relevant to her physical residual functional capacity ("PRFC"), she again asserts error. Finally, Plaintiff disputes the ALJ's credibility assessment concerning her subjective pain. The Court will address these issues separately.

## DISCUSSION

### I

**THE ALJ'S REJECTION OF THE ASSESSMENT OF PLAINTIFF'S TREATING PSYCHIATRIST, DR. LUSTIG, IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**

In his decision (AR 52-63), the ALJ determined Plaintiff's MRFC as follows: "She is moderately limited in her ability to understand and carry out detailed or complex tasks and instructions and in her ability to maintain concentration and attention." (AR 61.) In making this assessment, the ALJ rejected the contrary opinion of her treating

2

psychiatrist, Dr. Lustig, based on one stated reason, to wit: "I give lesser weight to the opinion of Dr. Lustig, who appeared to base part of his opinion on the [Plaintiff's] physical condition rather than her mental impairment." (AR 62, exhibit citation omitted.)

### A.  Applicable Law.

In evaluating mental impairments, 20 C.F.R. §404.1520a(c)(3)(4) and §416.920a(c)(3)(4) mandate that consideration be given, among other things, to activities of daily living ("ADLs"), social functioning; concentration, persistence, or pace; and episodes of decompensation.  These factors are generally analyzed in a Psychiatric Review Technique Form ("PRTF").  The PRTF is used at Step Three of the sequential evaluation to determine if a claimant is disabled under the Listing of Impairments; however, the same data must be considered at subsequent steps unless the mental impairment is found to be not severe at Step Two.  See SSR 85-16.

20 C.F.R. §§404.1520a(c)(1) and 416.920a(c)(1) require consideration of "all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment."[1]

SSR 85-16 suggests the following as relevant evidence:

---

[1]  20 C.F.R. §404.1545(c) and §416.945(c) also require consideration of "residual functional capacity for work activity on a regular and continuing basis" and a "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting."

> "History, findings, and observations from medical sources (including psychological test results), regarding the presence, frequency, and intensity of hallucinations, delusions or paranoid tendencies; depression or elation; confusion or disorientation; conversion symptoms or phobias; psycho-physiological symptoms, withdrawn or bizarre behavior; anxiety or tension. Reports of the individual's activities of daily living and work activity, as well as testimony of third parties about the individual's performance and behavior. Reports from workshops, group homes, or similar assistive entities."

It is also required under §404.1520a(c)(2) and §416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

Pursuant to the September 2000 amendments to the regulations which modify 20 C.F.R. §404.1520a(e)(2) and §416.920a(e)(2), the ALJ is no longer required to complete and attach a PRTF. The revised regulations identify five discrete categories for the first three of four relevant functional areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decomposition. These categories are None, Mild, Moderate, Marked, and Extreme. (§404.1520a(c)(3), (4).) In the decision, the ALJ must incorporate pertinent findings and conclusions based on the PRTF

4

technique. §404.1520a(e)(2) mandates that the ALJ's decision must show "the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section."

The Step Two and Three analyses (see Decision at AR 53-54) are intended to determine, first, whether a claimant has a severe mental impairment (Step Two), and if so, whether it meets or equals any of the Listings (Step Three). It is also required under §404.1520a(c)(2) and §416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

These findings and conclusions are relevant to the Step Two and Three analysis of whether a claimant has a severe mental impairment, and if so, whether it meets or equals any of the Listings. (See 20 C.F.R. Part 4, subpart p, App. 1.) The discussion in Listing 12.00, "Mental Disorders," is relevant:

> "The criteria in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations in paragraphs B and C must be the result of the mental disorders described in the diagnostic description, that is manifested by the medical findings in

5

paragraph A.

In Listing 12.00C, entitled 'Assessment of Severity,' it is stated that, 'we assess functional limitations using the four criteria in paragraph B of the Listings: Activities of daily living; social functioning; concentration; persistence, or pace; and episodes of decompensation. Where we use 'marked' as a standard for measuring the degree of limitation, it means more than moderate but less than extreme."

Social Security Ruling ("SSR") 96-8p makes the same point in distinguishing evidence supporting a rating of mental severity at Step Two, a Listing level impairment at Step Three, and the determination of an individual's MRFC at Step Four.

**B.   Analysis**.

At the hearing before the ALJ (AR 64-93), testimony was taken from a vocational expert ("VE"). Plaintiff's counsel (the same counsel who presently represents her in this proceeding) questioned the VE regarding mental limitations described as "moderate." Counsel posed a question which defined "moderate" limitations as describing an individual who is limited "between 26 and 33 percent of the time in the ability to maintain concentration, persistence, and pace, ..." (AR 89.) When this specific limitation was posed, the VE indicated that such a person would not be able to perform her past work, and that it would, in fact, generally preclude all work. (Id.)

This issue occupies a good deal of the initial focus of Plaintiff's argument in the JS. Plaintiff explains that this

6

definition of "moderate" was taken from a report of Universal Psychiatric Medical Center, which, in fact, the ALJ had reviewed. (See AR at 10-12, 623-656.) Plaintiff argues that by not contradicting the accuracy of this definition at the hearing, the ALJ accepted it. The Court does not agree. The definition by Plaintiff's counsel of moderate limitations as constituting a particular fractional inability to perform certain tasks is not supported by regulations or applicable Social Security Rulings. Indeed, the term "moderate" is not so defined in the Listings. There, a definition is ascribed only to the term "marked," which is utilized in the B Criteria as setting the standard for a Listing level impairment:

> "It means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [claimant's] ability to function independently, appropriately and effectively, and on a sustained basis."

20 C.F.R. §404, Subpt. P, App. 1, Rule 12.00.

Thus, the fractional limitations posited by Plaintiff's counsel to the VE were not supported by any definition of "moderate" contained in the regulations. As such, the hypothetical question falls short of the well-established requirement that it must reflect each of the claimant's limitations as supported by the evidence. See Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir. 1995); Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

More troubling to the Court is the ALJ's MRFC assessment. In

7

particular, the Court focuses upon the adequacy of the ALJ's rejection of Dr. Lustig's opinion.[2] Dr. Lustig reviewed Plaintiff's medical-psychiatric history (AR 278-280), performed a mental status examination (AR 280-282), conducted a clinical interview, and performed a psychological test protocol which was selected to assess Plaintiff's cognitive abilities and emotional personality features. (AR 282-283.) As a result, Dr. Lustig evaluated Plaintiff's mental functioning on a scale which included five levels which seem to correlate well with the levels of impairment utilized in Social Security evaluations. These were the following: no impairment; mild permanent impairment; moderate permanent impairment; marked permanent impairment; and extreme permanent impairment. (AR 285-286.) In utilizing this scale, Dr. Lustig arrived at levels of marked permanent impairment in all but two of the categories relevant to social functioning; in three of the categories relevant to memory, concentration, persistence and pace; and in one category reflecting deterioration or decompensation in complex or work-like settings. (Id.)

The ALJ rejected, or at least gave lesser weight, to Dr. Lustig's evaluation based on his conclusion that Dr. Lustig appeared to base part of his opinion of Plaintiff's physical condition rather than her mental impairment. (AR 62.) But this conclusion does not appear to be supported by the evidence. Dr. Lustig relied upon a mental status evaluation, (AR 280-282) and psychological test results (AR 282-287).

---

[2] From the documents contained in the AR (see, esp., AR 265-299), it appears that Plaintiff was seen and evaluated on numerous occasions by different psychiatrists at the Psychiatric Medical Group. The report of August 11, 2006 by Dr. Lustig, of that facility, is the particular focus of this discussion. (See AR at 276-290.)

8

1  Perhaps recognizing the inadequacy of the record in this regard,
2 the Commissioner argues that the ALJ's rejection of Dr. Lustig's
3 opinion was based on four discrete reasons set forth in the record.
4 (See JS at 19-21.)  It is the Commissioner's contention that the ALJ
5 thus provided specific and legitimate reasons based on substantial
6 evidence to reject Dr. Lustig's conclusions. (See JS at 19, citing
7 Morgan v. Commissioner of Social Security Administration, 169 F.3d
8 595, 600 (9th Cir. 1999).[3]

9  The Commissioner first asserts that the ALJ relied upon the
10 opinion of an examining psychologist, Dr. Riahinejad, who on December
11 29, 2006 examined Plaintiff at the request of the Department of Social
12 Services. (JS at 19; AR 206-212.)  Indeed, the assessments rendered by
13 Dr. Riahinejad are consistent with the ALJ's MRFC determination;
14 however, the ALJ provided no basis in his decision to prefer Dr.
15 Riahinejad's evaluation to that of Dr. Lustig, other than the reason
16 whose sufficiency the Court has rejected.

17  The Commissioner next asserts that the ALJ rejected Dr. Lustig's
18 opinion because he instead relied upon the assessment of Dr. Maibaum,
19 a psychotherapist, rendered on October 27, 2006 at the apparent
20 request of Plaintiff's workmen's compensation attorney. (AR 623-641.)
21 The Commissioner, however, does not cite a report prepared
22 approximately three months earlier by Dr. Tribble, another therapist
23 from the same facility, Universal Psychiatric Medical Center. (AR 644-

---

[3] Plaintiff correctly cites to Cequerra v. Secretary of Health and Human Services, 933 F.3d 735, 738. (9th Cir. 1981) for the proposition that only reasons articulated in the ALJ's decision are pertinent to this Court's review of the adequacy of the reasons for the rejection of Dr. Lustig's opinion. Nevertheless, as this matter will be remanded for further hearing, the Court will address the Commissioner's argument, to provide some guidance on remand.

1  656.)   Dr. Tribble interviewed Plaintiff, did a mental status
2  evaluation, and performed other objective testing (see AR at 645-646).
3  He made the following assessment, in pertinent part:

> "The severity and duration of the patient's symptoms
> have interfered with major life and personal functions...
> The patient now has trouble concentrating on virtually any
> given task at hand, and her functioning is impaired due to
> the above-described symptoms... Her emotional and cognitive
> symptoms in association with her physical injury symptoms
> have rendered her incapable of performing her previous work-
> related duties and responsibilities satisfactorily."

(AR 655.)

While the ALJ at least referenced Dr. Tribble (AR 59), his decision does not specifically reject his opinion or evaluate it in conjunction with the rest of the psychiatric and psychological evidence.  This was error.

For the foregoing reasons, the Court concludes that the ALJ's evaluation of all of the psychiatric and psychological evidence was insufficient to perform an adequate analysis and to reach conclusions at Step Two and Step Three of the sequential evaluation process.  On remand, the psychiatric and psychological evidence must be evaluated, and proper reasons given to substantiate the conclusions to be drawn as to Plaintiff's MRFC.

//
//
//
//

**II**

**THE ALJ'S ASSESSMENT OF PLAINTIFF'S CREDIBILITY WITH REGARD TO SUBJECTIVE PAIN IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**

The ALJ depreciated Plaintiff's subjective pain complaints, and supported his conclusions by noting the following: that although she testified she is an alien who has been granted asylum in the United States, she has not produced any documentation to substantiate that claim and did not have a resident alien card at the hearing; that she has not obtained medical treatment commensurate with her claims; that objective medical testing does not support her pain complaints and limitations; that she magnified her symptoms during certain medical examinations; and that her "appearance and demeanor at the hearing" substantiate depreciation of credibility. (AR 61-62.) For the following reasons, on remand, Plaintiff's credibility will be reevaluated.

**A. Applicable Law**.

Subjective complaints of pain or other symptomology in excess of what an impairment would normally be expected to produce are subject to the credibility assessment of an ALJ. Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001). An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). When determining credibility, the ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity." Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); see also, Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001). In

11

order to find that a claimant's subjective complaints are not credible, an ALJ "must specifically make findings that support this conclusion," Bunnell, 947 F.2d at 345, and provide "clear and convincing reasons." Rollins, 261 F.3d at 857; see also Varney v. Secretary of Health & Human Services, 846 F.2d 581, 584 (9th Cir. 1988) (requiring the ALJ to put forward "specific reasons" for discrediting a claimant's subjective complaints).

The absence of objective evidence to corroborate a claimant's subjective complaints, however, does not by itself constitute a valid reason for rejecting her testimony. Tonapetyan v. Halter, 242 F.3d at 1147. However, weak objective support can undermine a claimant's subjective testimony of excess symptomology. See e.g., Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998).

Implementing regulations prescribe factors which should be considered in determining credibility as to self-reported pain and other symptoms. In 20 C.F.R. §404.1529(c)(3), the factors to be considered are specified to include a claimant's daily activities ("ADL"); the location, duration, frequency and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication taken; treatment received; and measures taken to relieve pain.

The regulations also specify that consideration should be given to inconsistencies or contradictions between a claimant's statements and the objective evidence:

> "We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a

> conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you."

(20 C.F.R. §404.1529(c)(4).)

**B. <u>Analysis</u>.**

The ALJ indicated that although Plaintiff claimed she has been granted asylum in the United States, she produced no such documentation, and did not have a resident alien card at the hearing. Factually, this misstates the record. When questioned by her attorney whether she had amnesty, she answered affirmatively. (AR 72.) This testimony was revisited by the ALJ later in the hearing in the following portion of the transcript:

> "Q    Ma'am, how -- you've been -- did you say -- your counsel asked you if you got amnesty. Does that mean you have a green card?
> A     Yes.
> Q     Okay. Can I see it?
> Atty: Showing a card which is -- doesn't look too green any longer.
> ALJ:  They're no longer green. They're brown or tan.
> Atty: Tan.
> ALJ:  It's green on the back.
> Atty: A permanent resident card.

13

```
1           ALJ:       Permanent resident card number AO92-307-681, admitted
2                      11/22/89.  Thank you.  All right."
3  (AR 83-84.)
```

Thus, Plaintiff did in fact produce a resident alien card at the hearing. Whether or not Plaintiff was ever granted amnesty, however, is a point whose significance the Court does not fathom. The Court is aware of no statute, regulation, or case which distinguishes the evaluation of whether a Social Security claimant has a disabling condition based on whether or not she has been granted amnesty. Moreover, Plaintiff produced a resident alien card, thus documenting her legal status in the United States. The ALJ's extensive discussion of this issue in the decision, during which he factually erred by indicating she had not produced a resident alien card, and then relied upon this apparent inconsistency to depreciate her credibility, is obviously unsupported. Similarly, the ALJ's oblique reference to Plaintiff's "appearance and demeanor at the hearing," with no identification of exactly what it was about Plaintiff's appearance and demeanor that caused her credibility to be depreciated, does not withstand judicial review.

The third basis set forth by the ALJ appeared to be a conclusion that Plaintiff malingered, or "was magnifying her symptoms," during medical examinations by Drs. Rosenberg and Linder. (See AR at 432-441, and 520-535, respectively.) Yet, the Court's review of these reports does not uncover any explicit or implicit statement by these examiners that Plaintiff was malingering. They simply discounted her pain complaints based upon their conclusion that these complaints were unsubstantiated by the physical evidence. But there was no

14

indication, for example, that Plaintiff gave less than full effort during either of these examinations.

The other reasons cited by the ALJ need not be discussed, because the error with regard to the three reasons discussed is sufficient to cause a remand of this matter, and necessitates a proper reevaluation of Plaintiff's credibility.

### III
### THE ALJ PROVIDED NO REASON WHATSOEVER TO REJECT
### THE OPINION OF TREATING PHYSICIAN DR. LARSEN

In determining Plaintiff's PRFC, the ALJ adopted the opinion of Dr. Sedgh, a consulting internist who performed an internal medicine examination at the request of the Department of Social Services on December 21, 2006. (AR 62, 193-197.) Further, the ALJ noted that Dr. Sedgh's opinion was consistent with that of the PRFC assessment of January 11, 2007 by Dr. Ligot, the State Agency physician. (AR 62, 201-205.) With regard to the balance of the physical and medical evidence, however, the ALJ simply concluded that the opinions of Drs. Sedgh and Ligot were "generally consistent" with their opinions, and said no more.

Curiously, the Commissioner's brief simply indicates that the ALJ properly considered the treatment notes of Dr. Larsen (JS at 24-25), but takes no position as to whether the ALJ adopted or rejected Dr. Larsen's conclusions.

The Court has no basis to determine exactly what conclusions Dr. Larsen may have drawn that were consistent with those of the consultative examiner, or the State Agency physician. The Court does note, however, that, in Dr. Larsen's June 20, 2007 report, his

15

1  objective findings as to Plaintiff's right shoulder indicated positive
2  impingement maneuver.  He also found evidence of joint pain, and
3  positive results from certain testing.  As to Plaintiff's lumbar
4  spine, he found paraspinal muscle tenderness, with muscle spasm,
5  guarding, and restricted range of motion. (AR 562.)  He also diagnosed
6  bilateral tennis elbow and bilateral carpal tunnel syndrome. (Id.)

7       The Commissioner's argument is that since Dr. Larsen did not
8  provide any functional limitations, the ALJ was not required to
9  specifically reject Dr. Larsen's treatment notes, as they did not meet
10 the requirements of a medical opinion of disability. (JS at 25, citing
11 20 C.F.R. §404.1527(a)(2).)  But nothing in the law absolves the ALJ
12 from a duty to specifically address the findings and conclusions of a
13 treating physician, and to either accept or reject that opinion based
14 on specific and legitimate reasons supported by substantial evidence
15 in the record.  See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)
16 (as amended).

17      The Court is not at all confident that Dr. Larsen's opinions are
18 generally consistent with those of the consultative examiner or the
19 State Agency physician.  The Court notes that no medical examiner
20 ("ME") was utilized in this case to provide expert interpretation of
21 the varying medical opinions.  As Plaintiff points out, Dr. Larsen's
22 findings with regard to certain of Plaintiff's exertional limitations
23 may be very relevant to whether or not Plaintiff in fact, can perform
24 her past relevant work, as the ALJ determined.
25 //
26 //
27 //
28 //

For the foregoing reasons, the physical medical evidence must be reevaluated according to appropriate and applicable standards on remand. The matter will be remanded for further hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**

DATED: February 26, 2010                     /s/
                                       VICTOR B. KENTON
                                       UNITED STATES MAGISTRATE JUDGE